O

# United States District Court
# Central District of California

| | |
|---|---|
| REINA GONZALEZ, MARIA AGUILAR, ROSARIO FELIX, and ESPERANZA JIMENEZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FOOD MANAGEMENT PARTNERS, INC.; BUFFETS, LLC, FMP-OVATION PAYROLL, LLC and DOES 1–10, inclusive,<br><br>Defendants. | Case № 19-CV-08496-ODW (ASx)<br><br>**ORDER RE: MOTION TO COMPEL INDIVIDUAL ARBITRATION, AND DISMISS OR STAY ACTION [40]** |

## I. INTRODUCTION

Before the Court is a Motion to Compel Individual Arbitration and Dismiss or Stay Action ("Motion") filed by Defendants Food Management Partners, Inc., Buffets LLC, and FMP-Ovation Payroll, LLC ("Defendants") on April 17, 2020. (Mot., ECF No. 40.) Plaintiffs Reina Gonzalez, Maria Aguilar, Rosario Felix, and Esperanza Jimenez ("Plaintiffs") opposed on April 27, 2020. (Opp'n to Mot. ("Opp'n"), ECF No. 42.) Defendants replied on May 4, 2020. (Reply to Opp'n, ("Reply"), ECF No. 43.)

As shown below, there is a threshold factual dispute concerning whether Plaintiffs assented to the operative arbitration agreements that mandates a limited jury trial unless Plaintiffs, the parties opposing arbitration, do not demand a jury. Given the Court's Continuity of Operations Plan arising from the COVID-19 emergency, the Court requires additional information to assess the parties' positions on delaying adjudication of the Motion until a limited jury trial can take place. The Court therefore **ORDERS** the parties to file a **Joint Status Report by August 10, 2020**, advising the Court of their respective positions concerning staying this matter until a limited jury trial can take place, Plaintiffs choosing to rescind their jury demand so that an evidentiary hearing can take place, or Defendants withdrawing the Motion, to proceed with litigation.

## II. BACKGROUND

Defendants own and operate restaurants in California and throughout the United States. (Compl. ¶¶ 16–18, ECF No. 1.) Plaintiffs are Defendants' employees that "prepare and cook food, greet and serve customers, clean Defendants' restaurants, and perform various other tasks central to Defendants' operations." (Compl. ¶ 1.) On October 1, 2019, Plaintiffs filed a class and collective action alleging violations of the Fair Labor Standards Act ("FLSA") and other laws. (Compl. ¶¶ 57–162.)

Attached to Defendants' Motion and Plaintiffs' Opposition are declarations and documents attesting to conflicting accounts of whether Plaintiffs assented to arbitrate the claims now before the Court. Attached to Defendants' Motion is the Declaration of Uriel Delgado. (Decl. of Uriel Delgado ("Delgado Decl."), ECF No. 40-2.) Delgado was employed by Defendants as a regional manager and states that he "helped rollout the mandatory arbitration agreement to all California employees," including Plaintiffs. (Delgado Decl. ¶ 3.) According to Delgado, Plaintiffs and "all new hires" were required to sign the Mutual Agreement To Arbitrate New Claims (the "Agreement") as a precondition for employment. (Delgado Decl. ¶ 4.) Delgado "ensured that every employee" signed the Agreement before sending a report to his

supervisor confirming as much. (Delgado Decl. ¶¶ 4–6.) Attached as Exhibit 1 to the Delgado Declaration is an unsigned version of the Agreement. (Delgado Decl. Ex. 1, ECF No. 40-3.) Attached as Exhibit 2 to the Delgado Declaration is what he claims is a report he sent to his supervisor proving that Plaintiffs signed the Agreement. (Delgado Decl. Ex. 2, ECF No. 40-4.) Delgado states that he is "informed and strongly believes" that Plaintiffs signed the Agreement. (Delgado Decl. ¶ 7.)

Paragraph one of the Agreement states in relevant part:

> The Company and I agree and acknowledge that we will utilize binding arbitration as the sole and exclusive means to resolve all disputes which may arise out of or be related in any way to my application for employment and/or employment, including but not limited to . . . my compensation. The Company and I each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent me or the Company in a lawsuit against the other in a court of law. Both the Company and I agree that any claim, dispute, and/or controversy that I may have against the Company . . .shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act . . . .

(Agreement ¶ 1.)

Paragraph three of the Agreement states in relevant part:

> All claims brought under this binding arbitration agreement shall be brought in the individual capacity of myself or the Company. This binding arbitration agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees, or permit such claims or controversies to proceed as a class action, collective action, private attorney general action or any similar representative action. No arbitrator shall have the authority under this agreement to order any such class or representative action. By signing this agreement, I am agreeing to waive any substantive or procedural rights I may have to bring an action on a class, collective, private attorney general, representative, or similar basis.

(Agreement ¶ 3.)

Delgado's Declaration is bolstered by the Declaration of Tracy Amass, Defendants' Vice President of Human Resources. (Decl. of Tracy Amass ("Amass Decl."), ECF No. 40-5.) Amass states that all Defendants' employees, including Plaintiffs, were informed that they had to sign the Agreement and could not begin work until they did so. (Amass Decl. ¶ 7.) Defendants allegedly kept the Agreements at issue in hardcopy format in various storage facilities. (Amass Decl. ¶ 9.) For weeks, Amass searched for the Agreements purportedly signed by Plaintiffs, but could locate only the Agreement signed by Plaintiff Felix on December 12, 2016. (*See* Amass Decl. ¶¶ 10–11, Ex. 2 ("Felix Agreement"), ECF No. 40-6.)

The three Plaintiffs whose Agreements could not be located—Gonzalez, Aguilar, and Jimenez—each submit declarations that contradict those submitted by Defendants. (*See* Decl. of Reina Gonzalez ("Gonzalez Decl."), ECF No. 42-1; Decl. of Maria Aguilar ("Aguilar Decl."), ECF No. 42-2; Decl. of Esperanza Jimenez ("Jimenez Decl."), ECF No. 42-3.) Gonzalez and Aguilar state that they were not required to execute the Agreement before commencing employment, but were abruptly approached by a general manager named Alex during a shift and told to sign the Agreement. (Gonzalez Decl. ¶¶ 5–8; Aguilar Decl. ¶¶ 5–8.) Both Gonzalez and Aguilar state that they refused to sign the Agreement, and that during subsequent discussion among employees, "[w]e all agreed that" Defendants were "trying to take away our rights to file a lawsuit if we got hurt or had other reasons to bring a legal claim . . . ." (Gonzalez Decl. ¶ 15; Aguilar Decl. ¶ 14.) Both Gonzalez and Aguilar state that "I know Uriel Delgado and I have never given him . . . a signed arbitration agreement." (Gonzalez Decl. ¶ 20; Aguilar Decl. ¶ 18.) Jimenez's declaration states in relevant part that she "was never presented with any arbitration agreement or other document agreeing to waive or alter my right to bring claims against my employer in a court of law." (Jimenez Decl. ¶ 4.) She further states that "I have never seen an arbitration agreement and I have never heard of any other employees, existing or new hires, getting asked to sign a new document." (Jimenez Decl. ¶ 5.)

Defendants attach to their Reply an additional declaration of Uriel Delgado that disputes the veracity of Plaintiffs' declarations. (*See* Suppl. Decl. of Uriel Delgado ("Delgado Reply Decl."), ECF No. 43-1.) Delgado claims that he "strongly believe[s]" that Plaintiffs' declarations are "fabricated and untrue" and that he is highly confident based on his personal experience that all named Plaintiffs signed the Agreement. (*See* Delgado Reply Decl., ¶¶ 3, 5.)

### III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs contract disputes relating to arbitration where they affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). The FAA establishes "a liberal federal policy favoring arbitration agreements" and requires district courts to compel arbitration on all claims within the scope of the agreement. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

Under the FAA, if there is a factual dispute as to the validity of an arbitration clause, the court must conduct a limited jury trial unless the party opposing arbitration does not demand a jury. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default [of the arbitration agreement] . . . the court shall hear and determine such issue [without a jury].").

### IV. DISCUSSION

Defendants argue that the Court should dismiss this action because all Plaintiffs' claims are subject to arbitration under the Agreement. (Mot. 8.) Plaintiffs do not dispute that, if signed and not unconscionable, the Agreement contains a valid arbitration clause enforceable by Defendants, or that the FAA applies to it. (*See*

Opp'n 8–11.)  In their Reply, Defendants contend that, "if the Court is undecided about Plaintiffs' consent to the Agreement, the Court must hold a limited jury trial" to determine whether Plaintiffs assented to the Agreement.  (Reply 3.)

The Court agrees.  A factual dispute exists here and credibility issues warrant a limited jury trial, pursuant to 9 U.S.C. § 4, to determine whether Plaintiffs assented to the Agreement and under what circumstances.  *See GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016) (finding "[t]he district court erred in holding that [the plaintiff] waived its right to a trial to determine the enforceability of the written arbitration agreement" where the plaintiff challenged its validity in several submissions; "The district court was required to resolve that challenge pursuant to the procedures established by Section 4 of the Federal Arbitration Act."); *see also Chime Inst. v. Haney*, No. 2:13-CV-05762-SVW (RZx), 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013) ("Given the factual nature of this dispute, a limited jury trial must be held to determine the validity of the arbitration clause.") (citing *Fuqua v. Kenan Advantage Grp., Inc.*, 3:11-CV-01463-ST, 2012 WL 2861613 (D. Or. Apr. 13, 2012) ("This is a credibility issue that cannot be resolved based on competing affidavits. Therefore, prior to resolving [the] motion, an evidentiary hearing must be held to determine whether a valid Arbitration Agreement exists.")).

Plaintiffs, the parties opposing arbitration, demand a jury trial.  (*See* Compl. 1.)  Plaintiffs Gonzalez and Aguilar submit virtually identical declarations stating that they were "abruptly" approached by a manager, Alex, and forced to sign the Agreement against their will, but refused. (Gonzalez Decl. ¶ 14; Aguilar Decl. ¶¶ 11–13.)  They then describe an alleged confrontation with Alex and state that "I know for a fact that at least three other employees . . . told Alex that they refused to sign the document." (Gonzalez Decl. ¶ 16; Aguilar Decl. ¶ 15.)  Plaintiff Jimenez, contrary to Defendants' purportedly mandatory policies and practices, claims that *no* employees were required to sign an arbitration agreement.  (Jimenez Decl. ¶ 5.)  Defendants describe these claims as "blanket and unsupported" and submit sworn testimony and documents

demonstrating that all named Plaintiffs executed the Agreement in accordance with Defendants' mandatory, company-wide policy. (Reply 4; Amass Decl. ¶¶ 7–9; Delgado Decl. ¶ 7.) Considering the declarations and papers before the Court, it is clear that the Motion presents questions of fact and credibility that must be resolved according to the procedures established by Section 4 of the Federal Arbitration Act.

Hence, before resolving the Motion, a limited jury trial must be held to determine whether Plaintiffs assented to a valid arbitration agreement. Because the parties have a right to a hearing on this issue, a determination concerning whether the parties formed a binding arbitration agreement must be deferred.

## V.   CONCLUSION

For the reasons above, the Court **DEFERS** Defendants' Motion (ECF No. 40) and **ORDERS** the parties to jointly file a **Status Report on or before August 10, 2020**, outlining the parties' positions concerning staying this matter until a limited jury trial can take place, Plaintiffs choosing to rescind their jury demand so that an evidentiary hearing can take place, or Defendants withdrawing the present Motion, to proceed with litigation.

**IT IS SO ORDERED.**

August 3, 2020

             OTIS D. WRIGHT, II
       UNITED STATES DISTRICT JUDGE